# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **22-03051-eg**

**ORDER**

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/27/2023**



Entered: 02/27/2023

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Kara Ann Bradley,<br><br>　　　　　　　　　　Debtor(s). | C/A No. 22-03051-EG<br><br>Chapter 7<br><br>**ORDER ON DEBTOR'S MOTION TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13** |

**THIS MATTER** is before the Court on the Motion to Convert Case from Chapter 7 to Chapter 13 (the "Motion") filed by Kara Ann Bradley (the "Debtor").[1] Michelle L. Vieira, the Chapter 7 Trustee (the "Trustee") objected to the conversion of the case on the grounds that the Motion was filed in bad faith and the case would be subject to immediate conversion back to chapter 7 (the "Objection").[2] Among other things, the Trustee asserts that the Debtor's schedules failed to disclose approximately $24,000.00 in anticipated tax refunds; she deceptively scheduled a debt owed to the Internal Revenue Service ("IRS") of $115,000.00 for unpaid taxes, when it was in fact a debt owed solely by Debtor's non-filing spouse; her schedules contained numerous errors and inconsistencies; and her income is insufficient to fund a chapter 13 plan.

The Court conducted a hearing on this matter on February 1, 2023. The Debtor, the Trustee, and their respective counsel were present at the hearing, and the Debtor and the Trustee testified. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); accordingly, the Court may

---

[1] ECF No. 16, filed Dec. 15, 2022; as subsequently amended by ECF No. 21, filed Dec. 23, 2022.
[2] ECF No. 17, filed Dec. 16, 2022; as subsequently supplemented by ECF No. 25, filed Jan. 6, 2023.

1

enter a final order. Having considered the Motion and all other matters of record, the evidence introduced at the hearing, and the arguments of counsel, the Court finds and concludes as follows:[3]

## FINDINGS OF FACT

On November 7, 2022, the Debtor filed a voluntary chapter 7 petition. The Debtor is represented by William Joseph Virgil Barr ("Bankruptcy Counsel") who is associated with the Recovery Law Group. At the hearing, the Debtor testified she wanted to file this case under chapter 13 to be able to keep her home located at 2940 Gantt Drive, Johns Island, SC 29455 (the "Property"); however, an intake attorney of Recovery Law Group, Felix Rippy, and her Bankruptcy Counsel advised her to file this case under chapter 7.[4]

### A. *Debtor's Schedules and Statements of Financial Affairs*

On November 21, 2022 (the "Petition Date"), the Debtor filed her schedules and statements of financial affairs.[5] On Schedule A/B, she listed the value of the Property at $719,700.00, claimed an exemption in the Property of $67,100.00 on Schedule C, and listed a mortgage of $367,000.00 on Schedule D—her only secured debt; accordingly, it is clear that there is non-exempt equity in the Property. On Schedule A/B, the Debtor indicated on Question 28 that no tax refunds were owed to her.

In addition to her mortgage, the Debtor listed unsecured priority debts owed to the IRS of $115,000.00 and other non-priority debts totaling $46,260.83, including the debt owed to the plaintiff (the "Plaintiff") of a state court defamation lawsuit (the "Lawsuit") in the amount of

---

[3] At the end of the hearing, the parties requested the Court allow them until February 15, 2023, at noon to try to settle this matter; however, they were unable to reach a settlement and requested that the Court proceed with ruling on the Motion. *See* ECF No. 48.

[4] Debtor's Bankruptcy Counsel acknowledged that the case should have been filed under chapter 13. Specifically, at the hearing, he stated: "We filed a chapter 7 case for Mrs. Bradley on November 7th. I believe it was an emergency filing. After the meeting of creditors, we discovered that the case actually should have proceeded as a chapter 13."

[5] ECF No. 10.

$1,000.00 as a noncontingent, liquidated, and undisputed amount. The Debtor indicated that her counsel told her to list Plaintiff's claim in the schedules at $1,000.00 as an estimate because the Lawsuit was still pending and no judgment had been entered. While the deadline for non-governmental creditors to file proofs of claim is March 13, 2023, to date, claims in the total asserted amount of $12,547.37 have been filed by five claimants, including the Plaintiff's claim, which does not provide any details regarding the Lawsuit and lists the amount of the claim as "unknown."[6]

On Schedule I, the Debtor lists monthly income derived from her clothing business, Pink Pelican, of $900.00.[7] Debtor's husband, an attorney, is listed as being self-employed as "Pink Pelican Attorney"[8] and earning a net income of $7,901.00 per month. For some reason that remains unclear to the Court, the husband's income on Schedule I is broken down between (1) $5,000.00 in gross income from wages and salary, as reflected on line 4 of Schedule I—or $3,812.00 after subtracting tax, Medicare, and social security deductions, and (2) $4,089.00 from "net income from rental property and from operating a business, profession, or farm" as reflected on line 8(a). The Debtor testified that line 10 of Schedule I, which lists $7,901.00—or approximately $95,000.00 per year—represents the Debtor's husband's total monthly income.[9]

---

[6] Proof of Claim 1-1, filed Jan. 6, 2023.
[7] Debtor previously worked as a nurse, but now serves as the primary caretaker for her three children.
[8] The Debtor testified that this was a mistake in the schedules and the correct name of his firm is Bradley Law Firm.
[9] Official Form 122A-1 and 122A-2 attached to the schedules reflect that for the six months preceding the Petition Date, her husband's income, which fluctuates monthly, averaged $8,360.17 a month—or approximately $100,000.00 annually. According to the Statement of Financial Affairs, for her non-filing spouse's income for the past several years, she reported gross income of anywhere between $90,006.00 to $31,026.00 per year. The Debtor testified that her husband had provided her with the information regarding his income prior to her filing the schedules and statements.

3

### *B. Testimony at Meeting of Creditors Pursuant to 11 U.S.C. § 341*

The Trustee held a telephonic meeting of creditors on December 7, 2022 pursuant to 11 U.S.C. § 341 ("341 Meeting"), the audio of which was admitted into evidence.[10]  At the 341 Meeting, the Debtor testified under oath.

When questioned regarding the IRS debt of $115,000.00 listed on Schedule E and how it was incurred, the Debtor explained she had found out over the summer of 2022 that her husband had not filed their tax returns since 2017.  She then proceeded to file separate tax returns for the delinquent years and claimed her three minor children as dependents.  She further indicated she was expecting a tax refund for the late-filed tax returns:

| | |
|---|---|
| Debtor: | I filed separate tax returns when I found out . . . I took it upon myself to file my own and I think I received—well, I haven't gotten it back yet, but $24 or $26 thousand that we will pay towards the IRS for his taxes. |
| Trustee: | So you're getting a refund? |
| Debtor: | I will get a refund and it will go towards the IRS debt that he owes. |
| . . . | |
| Trustee: | [W]hen those refunds come in, you need to segregate that money and send it to my office…a separate return is a separate refund that is not available to pay your husband's taxes. |
| Trustee: | Have any of those funds come in yet? |
| Debtor: | No. |
| Trustee: | Okay.  Mr. Barr, do you understand that? |
| Debtor: | I had to mail all my tax returns. |
| Trustee: | Can you explain to me— |
| Debtor: | I'm sorry? |
| Trustee: | Mr. Barr, do you understand that those funds have to be turned over to me when they come in? |
| Mr. Barr: | Yes, Madam Trustee. |
| . . . | |
| Trustee: | Can you explain to me why the IRS debt of $115,000.00 is in this bankruptcy if it is owed by the husband? |
| Debtor: | I was told to include it. |
| Mr. Barr: | Yeah, I need to follow up with Mrs. Bradley on that, Madam Trustee, my |

---

[10] ECF No. 46, entered Feb. 8, 2023.

4

> understanding was that it was a joint tax debt.
>
> . . .
>
> UST:[11]   And did you report to your attorney that you were going to get a tax refund so that it could be listed in your bankruptcy schedules and statements?
>
> Debtor:   I sent them my tax returns.[12]

As to her husband's income listed on Schedule I, the Debtor estimated his income to be between $80,000.00 and $90,000.00 per year:

> Trustee:   And your husband is also listed as self-employed; what is the nature of his business?
> Debtor:   He's an attorney.
> Trustee:   And approximately how much does he make per month from his business?
> Debtor:   Umm, I don't know per month, but we—on our taxes, he makes about umm…$80 to $90 thousand a year.
> Trustee:   Why didn't he file with you in this bankruptcy case?
> Debtor:   Umm . . . it was just me that needed to file . . . I don't really know to be honest.

Finally, when questioned about the lawsuit and Plaintiff's claim against her, she testified as follows:

> UST:   And has [Plaintiff] actually received a judgment against you in the amount of $1,000, or where does $1,000 come from?
> Debtor:   I was told to put an estimate of what to owe her. She has not received a judgment, we have not gone to court, and we did go to mediation and she wanted $50,000 cash, but I don't have that.
> UST:   So the amount of her debt is unknown at this time?
> Debtor:   Correct.

On December 7, 2022, after the 341 Meeting was concluded, the Trustee made an entry on the docket of "Further Action Required: Trustee to Hold Case Open for 30 days – Debtor instructed to turn over all undisclosed tax refunds when received and to cooperate with the trustee's realtor to view and value the real estate."[13] According to the Trustee's testimony at the hearing, there

---

[11] The trial attorney for the United States Trustee was also present at the 341 Meeting and questioned the Debtor.

[12] While she testified that she provided her counsel with copies of her tax returns, no exemption for child tax credits or tax refunds was claimed on Schedule C.

[13] On the same day, the Trustee filed an application to employ bankruptcy counsel to, among other things, "provide legal assistance for the liquidation of non-exempt assets and other assets recovered by the Estate," which application was approved by the Court. ECF No. 12, filed Dec. 7, 2022 and granted by ECF No. 19, entered Dec. 21, 2022. On December 16, 2022—the day following the filing of the Debtor's Motion—the Trustee also filed an application to

5

were email exchanges between Bankruptcy Counsel and the Trustee at some point between December 7, 2022 and December 12, 2022, in which Bankruptcy Counsel expressed on several occasions the Debtor's desire to convert the case.

### C. *Motion to Convert to Chapter 13 and Testimony at Trial*

On December 15, 2022, the Debtor filed the Motion, and, the following day, the Trustee filed the Objection. The parties filed a Joint Statement of Dispute and Stipulation prior to the hearing and, in it, the Debtor indicated: "Debtor through Counsel informed Trustee that Debtor's Counsel would seek no further attorney fees if the case could be converted, along with agreeing to convert the case back to a Chapter 7 if the Debtor Chapter 13 Case was dismissed."[14] The Court held a hearing on the Motion on February 1, 2023, at which both the Debtor and the Trustee testified. The Debtor testified that she wants to convert to chapter 13 mainly to keep the Property. She explained that it was her intent to file chapter 13 in the first place and that she had told her attorney she did not want to risk losing her home through bankruptcy, but her counsel told her that she should file for chapter 7 relief instead.

On direct examination, the Debtor stated that, as of the date of the hearing, she had received an estimated $24,000.00 in tax refunds for the years 2019 through 2021. The refunds were e-deposited into her bank account, but she had not turned the funds over to the Trustee as requested at the 341 Meeting because of the pending motion to convert her case to chapter 13 and her parents had told her she should not turn the funds over because over half of the refunds were for child tax credits. She further testified that she still had the funds but would turn them over to the Trustee if needed. The Court instructed her not to spend the funds from the tax refunds and preserve them

---

employ a real estate agent to sell the Property. ECF No. 18, filed Dec. 16, 2022 and granted by ECF No. 23, entered Jan. 3, 2023.
[14] ECF No. 29, filed Jan. 17, 2023.

6

while the Motion was under advisement, and when asked where the funds were currently, Debtor stated that they were in her father's bank account and were placed there to ensure that she would not spend them.

On cross-examination, when questioned about her testimony at the 341 Meeting that she had not received her tax refunds as of December 7, 2022, the Debtor stated that she was not given the opportunity to properly respond or explain whether she had, and that she would have disclosed that she received a state tax refund and a federal tax refund "had [she] been given the chance to." The Debtor testified that she could not recall what her response was at the 341 Meeting to the question of whether she had received the tax refunds and could not recall exactly when she had received them, but indicated that prior to the 341 Meeting she had probably received her state tax refund and her 2020 federal tax refund of $6,892.00; however, she seemed confident that she had not received the largest refund of approximately $14,000.00 for her 2021 federal tax refund at that time. As to the tax refunds for 2017 and 2018, the Debtor testified that while she believed the refunds for those years totaled approximately $3,000.00, she had received a letter from the taxing authorities informing her that she would not receive refunds for those years due to the applicable statute of limitation. Lastly, she testified that while she had not discussed receiving state tax refunds at the 341 Meeting, the Trustee had not inquired about those.

The Trustee testified that, following the 341 Meeting, she filed a tax intercept with the IRS and, when she had not heard back from the IRS, she contacted them and found out that the Debtor had received about $20,000.00 in tax refunds prior to the 341 Meeting. On cross-examination, Trustee's counsel asked the Debtor, "Would it surprise you if I told you that the IRS transcripts show that you received [the 2021 tax refund] as a direct deposit into your account on November 30th before your 341 meeting?", Debtor responded that she believed she had not received the 2021

7

tax refund at that time. No further information, however, was introduced by either party into evidence to confirm the exact date the tax refunds were deposited in the Debtor's accounts.

As reflected in her schedules and as she testified at the hearing, the Debtor has two bank accounts, both with Wells Fargo, with account numbers ending in -1904 and -3243. At the hearing, she testified she has turned over all bank statements covering the 90 days before filing—or August 9, 2022, through November 7, 2022—to her counsel. More specifically, she testified she had provided various bank statements to her attorney "several times"—prior to the bankruptcy, approximately two to three weeks prior to the hearing, and again the week prior to the hearing. The Trustee, however, testified that she had not received all the requested bank statements. With respect to the account ending in -3243, she had received the October 2022 bank statement but had not received the statements covering August 9 through September 30 and November 1-7 of 2022.[15] As to the bank account ending in -1904, the Trustee had received the August and September 2022 statements but not the ones covering October through November 7 of 2022. Despite not being listed on her schedules, the Debtor also has online bank accounts with PayPal, CashApp, Shopify, and Venmo. While the Debtor stated she had also provided statements for these online bank accounts to her counsel "several times" as requested by the Trustee, according to the Trustee, no such statement had been turned over. The Debtor testified that she was not aware that the Trustee had not received the bank statements she had requested.

If allowed to convert to chapter 13, the Debtor stated that while she is not sure what plan payment amount would be necessary, she would be able to fund a plan with the financial assistance of her husband and/or her parents, if necessary.

---

[15] The Trustee indicated that this was the bank account in which the tax refunds were direct deposited.

*D. Filing of Amended Schedules*

During cross-examination, the Debtor suggested that she had tried to amend the schedules when she realized the errors and inconsistencies, but her attorney indicated to the Court when expressly asked at the hearing why the schedules had yet to be amended, he was "under the thought process that we would go through the hearing first on our motion to convert and then – if we were able to convert then there's gonna be a lot of amendments that need to be made. We need to put together the chapter 13 plan, we need to make some other addresses to some of the things we discovered. That is the only reason why we have not amended it." Following the February 1, 2023, hearing, the Debtor filed Amended Schedules A/B and I.[16]

The filed amended schedules correct some of the inconsistencies noted above. Amended Schedule A/B was amended to disclose that the Debtor is owed $24,000.00 in tax refunds for 2019 through 2021 with an explanation that "debtor believes $10-14k is from Covid related Child Tax Credit." Moreover, amended Schedule I correctly stated Debtor's husband's law firm name—as opposed to the prior listing of "Pink Pelican attorney." Schedule E, however, was not amended to delete the $115,000.00 claim that Debtor testified was solely her husband's debt and Schedule F was not amended to change the Plaintiff's debt for the pending Lawsuit listed at $1,000.00 as disputed, contingent, and unliquidated.

**CONCLUSIONS OF LAW**

The right of a debtor to convert a chapter 7 case to one under chapter 13 is governed by 11 U.S.C. § 706. Section 706(a) provides that a debtor may convert a case from chapter 7 to chapter 11, 12, or 13 at any time so long as the case was not previously converted. 11 U.S.C. § 706(a). Prior to the Supreme Court's decision in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007),

---

[16] ECF No. 38, filed Feb. 2, 2023.

many courts treated the debtor's right to convert under § 706(a) as absolute. *See, e.g, In re Finney*, 992 F.2d 43, 44-45 (4th Cir. 1993). However, in *Marrama*, the Supreme Court held that a chapter 7 debtor does not have an absolute right to convert their case to chapter 13; rather, the Debtor's "right" to convert is limited by § 706(d) which provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." The *Marrama* Court construed § 706(d) as not only a limitation to conversion if a debtor is not eligible for chapter 13 under the limits of § 109(e), but also if the debtor could be subject, once in a chapter 13, to reconversion or dismissal of the case pursuant to § 1307(c). More specifically, the Supreme Court stated:

> There are at least two possible reasons why [the chapter 7 debtor] may not qualify as such a [chapter 13 debtor], one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c). The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief. More pertinently, the latter provision, § 1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief. None of the specified causes mentions prepetition bad-faith conduct . . . In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.

*Id.* at 372-74. While the Supreme Court did not articulate what constitutes lack of good faith when considering motions to convert from chapter 7 to chapter 13, it expressly recognized that such exception is to be used where the purpose of the fresh start for honest but unfortunate debtors is not appropriate—*i.e.* "in response to fraudulent conduct by the *atypical* litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 374 n. 11 (emphasis added) ("It suffices to emphasize that the debtor's conduct must, in fact, be *atypical*. Limiting dismissal or denial of conversion to *extraordinary* cases is particularly appropriate in

10

light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation.").

The Fourth Circuit has stated that "[t]he concept of bad faith 'does not lend itself to a strict formula'… Courts must consider the totality of the circumstances underlying each case to determine whether a debtor has acted in bad faith." *Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018) (citing *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013)). This Court has previously applied a totality of the circumstances analysis for determining the absence of good faith in connection with a motion to convert or dismiss under 11 U.S.C. § 1307. *See In re Blackmon*, 628 B.R. 804, 809 n. 6 (Bankr. D.S.C. 2021) (granting the trustee's motion to convert case under § 1307(c) for cause based on debtor's bad faith in failing to properly schedule assets); *In re McFadden*, 383 B.R. 386, 389 (Bankr. D.S.C. 2008) (dismissing chapter 13 case under § 1307(c) based upon court's finding that the case was not filed in good faith). Accordingly, the Court finds that a totality of the circumstances analysis is also appropriate to determine a lack of good faith in the context of a motion to convert a chapter 7 case to a chapter 13 case. *See In re Woodberry*, No. 20-1612, 2021 WL 2660488, at *2 (6th Cir. Mar. 18, 2021) ("In deciding a motion to convert, the bankruptcy court has the authority to police the integrity of its proceedings and look to the totality of the circumstances.") (internal citations and quotations omitted).

The Debtor bears the initial burden of making a *prima facie* case for conversion by demonstrating that there has been no prior conversion of the case, that the Debtor is eligible for relief under 11 U.S.C. § 109, and that conversion is to achieve a purpose permitted under the proposed chapter. *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007). *See also In re Cilwa*, C/A No. 15-00263-HB, 2016 WL 2641963 (Bankr. D.S.C. Apr. 14, 2016).

The burden then shifts to the objecting party—here, the Trustee—to demonstrate that the Debtor is not eligible for relief under *Marrama. Id.*

Debtor has demonstrated that her case has not been previously converted, that she is eligible for relief under 11 U.S.C. § 109(e) because she is an individual with regular income, her debts do not exceed the debt limits to seek relief under chapter 13 of the Bankruptcy Code, and she requests conversion of her case so that she can keep her personal residence and file a chapter 13 plan to repay her creditors. Accordingly, the Court finds that the Debtor has made a *prima facie* case for conversion under 11 U.S.C. § 706.

The Trustee asserts that the Debtor's Motion to convert should be denied because it was filed in bad faith and, if conversion was granted, the case would be subject to immediate reconversion to chapter 7. The Trustee asserts the following as indications of the Debtor's bad faith in attempting to convert her case to chapter 13: (a) the Debtor failed to disclose $24,000.00 in anticipated tax refunds and indicated that she planned to have her tax refunds transferred to her non-filing spouse to be used to pay his separate tax liability; (b) she scheduled $115,000.00 in IRS debt of her non-filing husband as her own; (c) she failed to list any codebtors on Schedule H, even though she listed a mortgage on the co-owned Property; (d) she provided testimony at the 341 Meeting regarding her husband's income which was inconsistent with the information on the schedules and testified falsely about whether she received the tax refunds;[17] and (e) she listed the Lawsuit debt as $1,000.00 when the Plaintiff is demanding over $50,000.00. The Trustee further argues that Debtor's income is insufficient to fund a chapter 13 plan.

---

[17] More specifically, the Trustee claims that while at the 341 Meeting, the Debtor claimed to be unsure of her husband's income, she estimated that he made approximately $80,000.00 to $90,000.00 per year, which, according to the Trustee, is inconsistent with the figure of $5,000.00 per month listed on Line 4 of Schedule I for her spouse—which would amount to only $60,000.00 per year. The Trustee, however, only focused on Line 4 and disregarded the additional income stated in Schedule I.

12

In response, the Debtor testified that she filed this bankruptcy case on an emergency basis to stall the Lawsuit filed against her. She admits that her schedules are incorrect regarding the disclosure of her anticipated tax refunds but asserts that this was an error and that she was forthcoming about the refunds when questioned regarding her tax debts during her 341 Meeting. She stated that she was not questioned regarding her state tax refunds. She testified that she had not spent the tax refunds and would not do so. The Debtor further testified that she had provided copies of her tax returns to Bankruptcy Counsel prior to filing her case, and that she was advised by Bankruptcy Counsel to list the IRS debt of $115,000.00 on her schedules. She further testified that she did not list her husband as a codebtor on Schedule H for her mortgage debt because she did not understand the meaning of the term "codebtor." In addition, she stated that she had asked Bankruptcy Counsel to amend her schedules prior to the hearing, but he had not done so for the reasons stated above.

Regarding her husband's income, Debtor testified that her schedules do reflect the correct total amount of his monthly income, but it is divided between two entries on Schedule I: $5,000.00 is listed on Line 4 of Schedule I as her husband's salary but $4,089.00 is listed on Line 8(a) as additional income from her husband's operation of a business or profession. Therefore, while the listing of the income in two separate categories on Schedule I may have been incorrect, her schedules in fact reflect her husband's annualized net income is approximately $94,000.00 and in line with what she testified to at the 341 Meeting.

Debtor testified that she was counseled to list the debt for the Lawsuit in the amount of $1,000.00 because no judgment had yet been entered. She admitted that she did not list the Lawsuit as contingent, unliquidated, or disputed, and further stated that she does not know what those terms

13

mean. She further testified that she believed she would be able to make her chapter 13 plan payments with the support of her husband and/or parents.

Based on her testimony, the Debtor had intended to file a chapter 13 bankruptcy case from the beginning so she could keep her home, but her Bankruptcy Counsel advised her to file a chapter 7.[18] During her testimony, the Debtor appeared flustered, emotional about the predicament in which she found herself, and her testimony was at times equivocal as she appeared financially naïve and at times puzzled by the questions posed of her. Overall, she appeared confused regarding her bankruptcy schedules, generally uninformed regarding her personal finances, and appears to rely upon advice from family members to manage her financial affairs. Her testimony revealed that she volunteered information regarding the tax refunds during her 341 Meeting without being directly questioned about whether she had received any tax refunds. While the Trustee argues that the Debtor testified falsely about whether she had received those funds as of the day of the 341 Meeting because information she had received from the IRS indicated that she had received approximately $20,000.00 prior to then, no evidence was introduced in the form of IRS transcripts or otherwise to indicate the exact amount and dates that the funds were actually deposited in the Debtor's bank account. There is no indication that the Debtor acted with dishonesty of belief or purpose in not disclosing the tax refunds in her schedules. *See In re Nelson*, No. 13-32469, 2014 WL 1884323, at *4 (Bankr. W.D.N.C. May 12, 2014).[19]

---

[18] Bankruptcy Counsel indicated that this was due to uncertainty regarding the amount of the mortgage debt on the Property.

[19] This case appears to be distinguishable from this Court's decision in *In re Gabriel* which the Trustee referenced, where the Court considered a debtor's motion to convert a chapter 7 case to a chapter 13 and ultimately denied the motion based upon the debtor's conduct indicating a lack of good faith. 390 B.R. 816, 821 (Bankr. D.S.C. 2008). In that case, the debtor had understated the amount of funds in her bank account at the time of filing; failed to cooperate when the trustee demanded turnover, spending the funds to the detriment of her creditors; and failed to disclose a tax refund. *Id.* at 820. The facts in this case appear less egregious in that the Court has no evidence before it to disprove the Debtor's testimony that she has not spent the refunds, despite subsequently placing them in her father's account so that they would not be spent. In *Gabriel*, one of the significant facts relied upon for the denial of the motion to convert was that the debtor had consented to a denial of discharge on grounds that were "anchored firmly in her

14

The Court acknowledges the seriousness of the inaccuracies and omissions in the schedules and does not condone a debtor's blind reliance on counsel or family members for their failure to ensure that the information disclosed in schedules, statements, and reports filed with the Court and signed under penalty of perjury are complete, truthful, and accurate. Debtors who make such omissions or testify falsely while under oath should suffer consequences in their bankruptcy case if such omissions or false oaths are made with dishonesty of belief or purpose. The Court also notes that some of the facts in this case are somewhat perplexing and the record before it leaves the Court with some unanswered questions. Under the facts before the Court and the evidence presented, however, the Court finds that the Trustee has not met her burden by a preponderance of the evidence. The Court cannot find that Debtor's omissions and actions, especially when some of her testimony calls into question whether she was properly counseled on several aspects of the case, were in bad faith. To be clear, that does not preclude any party from seeking any future relief based on Debtor's conduct as additional facts come to light. Currently, however, there is no evidence before the Court of significant fraudulent conduct that leads the Court to believe the Debtor is attempting to abuse the bankruptcy process.

The sale of Debtor's home would greatly impact Debtor and her family.[20] In a chapter 13 case, Debtor's unsecured creditors will still receive payment but over a longer period of time. While the Trustee also raises concerns about the Debtor's ability to confirm a plan, the issue of whether the Debtor will be able to propose a feasible plan may be properly addressed at

---

fraudulent post-petition conduct." *Id.* at 821. There is no concrete evidence currently before the Court of fraudulent post-petition conduct in this case. The facts in this case are more similar to *In re Holmes*, C/A No. 07-05770-JW, slip op. (Bankr. D.S.C. Mar. 19, 2008). In *Holmes*, the Court granted the debtor's motion to convert her chapter 7 case to a chapter 13 case, concluding that the debtor's initial failure to disclose the potential refund was an isolated error that was mitigated by the debtor's honest testimony at her meeting of creditors and her good faith effort to repay her creditors.

[20] The Debtor testified that if she had to sell her home and find replacement housing, she believed her rent would be higher than her mortgage payment.

15

confirmation. *See In re Kuhn*, 322 B.R. 377, 398 (Bankr. N.D. Ind. 2005) (stating that review of a conversion motion under 11 U.S.C. § 706(a) does not encompass the issue of ultimate compliance of a plan with the criteria of chapter 13, including that of 11 U.S.C. § 1325(a)(6) – those issues are determined at the confirmation hearing); *In re Dugger*, No. 6:16-bk-04010, 2017 WL 11569067, at *3 (Bankr. M.D. Fla. Mar. 13, 2017) (same). The Court notes that given that the deadline for creditors to file proofs of claim has yet to expire, it is premature at this juncture to know what a chapter 13 plan will propose or how it will be funded.

For the foregoing reasons, it is hereby

**ORDERED** that the Debtor's Motion to Convert Case from Chapter 7 to Chapter 13 is granted. Upon being converted, this case may not be dismissed but shall be reconverted to a chapter 7 if the Debtor becomes unable to continue in chapter 13 for any reason. In addition, the Debtor is ordered not to take any action that would reduce the value of the Debtor's non-exempt assets.

**IT IS FURTHER ORDERED** that the Debtor, within 14 days from the entry date of this Order, shall file the statements and schedules required by Federal Rule of Bankruptcy Procedure 1007(b), if such documents have not already been filed.

**IT IS FURTHER ORDERED** that the Debtor, within 14 days from the entry date of this Order, shall file a chapter 13 plan.

**IT IS FURTHER ORDERED** that the chapter 7 trustee or any other party entitled to compensation or reimbursement of expenses as allowed under the Bankruptcy Code rendered while this case was being administered under chapter 7 may, within 30 days from the entry date of this Order, file an application for compensation and reimbursement of expenses.

**AND IT IS SO ORDERED**.